UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION AT FRANKFORT
CASE NO. _____

CHRISTEN JOHNSON                                                                                   PLAINTIFF

v.                                                   **COMPLAINT**

MYRON JACKSON, in his individual capacity
Serve: 1250 Louisville Road
      Frankfort, Kentucky 40601

and

JASON BRISCOE, in his individual capacity
Serve: 1250 Louisville Road
      Frankfort, Kentucky 40601                                                              DEFENDANTS

## INTRODUCTION

Christen Johnson is a mother of three children and dental assistant living in Franklin County, Kentucky.

On July 31, 2024, Kentucky State Police Trooper Myron Jackson took exception to Christen silently filming his illegal traffic stop from her front porch. Trooper Jackson stormed up to Christen and threatened her, "**Go inside of the house or I will take you from your kids and take you to jail.**" When Christen remained filming on her porch, Trooper Jackson grabbed her, forcefully pulled her from her porch, and dragged her across the ground. Christen's two-, seven-, and ten-year-old children screamed and cried, watching helplessly as their mother was violently handcuffed and dragged away to jail.

All charges were later dismissed for lack of probable cause. Christen now seeks redress for the injuries she sustained as a result of Defendants' misconduct.

—1—

## JURISDICTION AND VENUE

1. This Complaint seeks remedies pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's First, Fourth, and Fourteenth Amendment rights as well as violations of the laws of the Commonwealth of Kentucky.

2. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Supplemental jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff, Christen Johnson, is a resident of Franklin County, Kentucky at all times relevant hereto.

6. Defendant, Seargent Jason Briscoe, at all times relevant herein, was an employee of the Kentucky State Police.

7. Sgt. Briscoe was responsible for the oversight, training, and activities of Trooper Jackson.

8. According to KSP Policy AM-B-3, "All supervisory personnel shall be accountable for the activities of all employees under their immediate control."

9. At all times relevant herein, Sgt. Briscoe acted under the color of the laws, statutes, and regulations of the Commonwealth of Kentucky.

10. Defendant, Trooper Myron Jackson, at all times relevant herein, was an employee of the Kentucky State Police.

11. At all times relevant herein, Trooper Myron Jackson acted under the color of the laws, statutes, and regulations of the Commonwealth of Kentucky.

12. All matters contained herein occurred in Franklin County, Kentucky.

## FACTS

13. Around 9:45 p.m. on July 31, 2024, Trooper Jackson observed a vehicle with tags that displayed "07/24."

14. Trooper Jackson testified that his KSP issued computer alerted him that tags reading "07/24" are expired on July 31, 2024.

15. According to Trooper Jackson, KSP has an internal system alerting its officers statewide that registration tags are expired on the last day of each month when they are not actually expired.

16. Trooper Jackson initiated his police lights to pull over this vehicle for allegedly expired tags.

17. The vehicle being stopped was operated by Christina Calvert, Christen Johnson's mother.

18. The registration tags on Christina Calvert's vehicle were not expired.

19. Ms. Calvert pulled over by parking her vehicle into Christen's driveway.

20. Christen, who was putting her children to bed, noticed police lights in her driveway and stepped outside in pajamas to see what was going on.

21. Christen was confused to find her mother pulled over by a state trooper in her driveway.

22. Christen came upon a debate between Ms. Calvert and Trooper Jackson, as they disagreed over whether tags that say July are valid on the last day of July.

23. Trooper Jackson ordered Christen to return inside without providing an explanation of the stop going on in her driveway.

24. Trooper Jackson threatened Christen with arrest if she did not go inside. Christen responded by saying she has three children inside.

25. Christen went to get her phone from inside the residence and then stood on her front walkway—approximately twenty-five feet from the traffic stop—to record the interaction.

26. She did not re-approach Trooper Jackson.

27. She did not pose a threat to Trooper Jackson.

28. She did not say a word when she began filming.

29. She did not interfere with the traffic stop in any way.

30. She began filming from approximately twenty-five feet away with her hand on her hip.

31. Trooper Jackson turned toward Christen, approached, and reiterated his command to go inside: "Go inside of the house or I will take you from your kids and take you to jail."

32. Christen responded that she had a right to record from a safe distance.



*Pictured above, screenshots from Trooper Jackson and Christen Johnson's perspectives as they exchanged words on Christen's front porch*

—4—

33. Because of Christen's assertion of her Constitutional rights, Trooper Jackson grabbed Ms. Johnson's wrists, forced her hands behind her back, and placed her in handcuffs.

34. As he escorted Christen in handcuffs toward his cruiser, Trooper Jackson yanked her arm.

35. Christen was barefoot and being dragged over gravel, so when Trooper Jackson yanked her arm she fell onto gravel and Trooper Jackson dragged her body toward his cruiser.

36. Christen suffered scrapes and bruises when Trooper Jackson dragged her handcuffed body through the gravel.

37. Trooper Jackson pushed Christen on her hands and knees into the back of his patrol vehicle.

38. Trooper Jackson did not seatbelt Christen in his cruiser.

39. Trooper Jackson then departed the scene with Christen crying and pleading about needing to be with her kids.

40. Trooper Jackson did not issue a written citation or warning to Ms. Calvert about her tags.

41. Christen's children were crying and screaming inside the house.

42. Trooper Jackson did not pause for a moment to check on Christen's two-, seven-, and ten-year-old children that he left in the home alone.

43. Ms. Calvert was not permitted to be alone with Christen's children, according to family court orders. This is the only person Trooper Jackson left outside the home with the kids inside.

44. In the midst of the arrest, Christina Calvert called 911.

45. Christina Calvert was soon connected with KSP supervisor Sgt. Jason Briscoe.

46. Prior to Christen being booked into jail as an inmate, Sgt. Briscoe reviewed the bodycam footage of the arrest.

47. The bodycam footage clearly depicted the lack of probable cause for the arrest of Christen and the unconstitutional nature of Trooper Jackson's actions.

48. Prior to Christen being booked into jail as an inmate, Sgt. Briscoe informed Christina Calvert that he would not interfere with the arrest.

49. As the reviewing supervisor with opportunity to do so, Sgt. Briscoe should have taken steps to ensure Christen was not booked into jail based on the unlawful arrest, such as order Trooper Jackson to release Christen or to issue a summons or citation in lieu of continued custodial arrest.

50. Christen was booked as an inmate at the Franklin County Regional Jail in her pajamas.

51. Upon being released the next day, Christen began a several-mile walk home, still shocked about what happened. She eventually arrived to find her home locked and no kids inside.

52. On February 27, 2025, after a probable cause hearing at which Trooper Jackson testified, the Franklin District Court ruled that there was no probable cause for the arrest and dismissed all charges against Christen.

## COUNT I

**42 U.S.C. § 1983—Retaliation in Violation of the First Amendment of the United States Constitution**

*As to Defendant Myron Jackson*

53. Plaintiff incorporates by reference the allegations in preceding paragraph in the Complaint.

54. 42 U.S.C. § 1983 states:

    > Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . .

55. Defendant Jackson is a "person" for the purposes of 42 U.S.C. § 1983.

56. Defendant Jackson at all times relevant hereto, was acting under the color of state law in his capacity as a law enforcement officer.

57. Defendant Jackson retaliated against Plaintiff and violated her constitutional rights by arresting her and using excessive force due, at least in part, to filming police activity from a safe distance and/or constitutionally protected area.

58. Plaintiff was engaged in clearly established protected First Amendment conduct by filming police from a safe distance without interference.

59. Defendant Jackson took retaliatory action against Plaintiff that adversely affected her constitutionally protected speech when he illegally arrested her and used excessive force.

60. Defendant Jackson's actions were directly motivated, at least in part, by Plaintiff's activity of filming police from a safe distance and/or constitutionally protected area.

61. As a direct and proximate result of Defendant Jackson's conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, deprivation of rights,

medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

62. Because Defendant Jackson's actions were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See* Smith v. Wade, 461 U.S. 30 (1983).

## COUNT II

**42 U.S.C. § 1983—Violation of the Fourth Amendment of the United States Constitution**

*As to Defendant Myron Jackson*

63. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

64. Defendant Jackson at all times relevant hereto, was acting under the color of state law in his capacity as a law enforcement officer.

65. Defendant Jackson violated Plaintiff's constitutional rights by unlawfully seizing Plaintiff and using excessive force against her.

66. Defendant Jackson's actions were not in good-faith and were in violation of clearly established law.

67. As a direct and proximate result of Defendant Jackson's conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, deprivation of rights, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

68. Because Defendant Jackson's actions were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected

rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. See *Smith v. Wade*, 461 U.S. 30 (1983).

## COUNT III

### 42 U.S.C. § 1983—Violation of First Amendment of the United States Constitution (Supervisory Liability/Failure to Intervene)

*As to Defendant Jason Briscoe*

69. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

70. Defendant Briscoe is a "person" for the purposes of 42 U.S.C. § 1983.

71. Defendant Briscoe at all times relevant hereto, was acting under the color of state law in his capacity as a law enforcement officer.

72. Defendant Briscoe had a duty to intervene to prevent a first amendment constitutional violation by a fellow officer.

73. Defendant Briscoe had an opportunity to intervene and chose not to, demonstrating a deliberate indifference to Christen's constitutional rights.

74. Additionally, Defendant Briscoe's actions constituted implicit authorization, approval, and/or knowing acquiescence of unconstitutional conduct.

75. Defendant Briscoe further failed to correct and/or punish Defendant Jackson's actions, demonstrating a practice of ratifying Jackson's unconstitutional acts.

76. As a direct and proximate result of Defendant Briscoe's actions, the Plaintiff's rights guaranteed to her by the First and Fourth Amendments of the United States Constitution were violated.

77. As a direct and proximate result of Defendant Briscoe's conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both

compensatory and general, including, but not limited to, deprivation of rights, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

78. Because Defendant's actions were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Smith v. Wade,* 461 U.S. 30 (1983).

## COUNT IV

### 42 U.S.C. § 1983—Violation of Fourth Amendment of the United States Constitution (Supervisory Liability/Failure to Intervene)

*As to Defendant Jason Briscoe*

79. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

80. Defendant Briscoe is a "person" for the purposes of 42 U.S.C. § 1983.

81. Defendant Briscoe at all times relevant hereto, was acting under the color of state law in his capacity as a law enforcement officer.

82. Defendant Briscoe had a duty to intervene to prevent a fourth amendment constitutional violation by a fellow officer.

83. Defendant Briscoe had an opportunity to intervene and chose not to, demonstrating a deliberate indifference to Christen's constitutional rights.

84. Additionally, Defendant Briscoe's actions constituted implicit authorization, approval, and/or knowing acquiescence of unconstitutional conduct.

85. Defendant Briscoe further failed to correct and/or punish Defendant Jackson's actions, demonstrating a practice of ratifying Jackson's unconstitutional acts.

86. As a direct and proximate result of Defendant Briscoe's actions, the Plaintiff's rights guaranteed to her by the First and Fourth Amendments of the United States Constitution were violated.

87. As a direct and proximate result of Defendant Briscoe's conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, deprivation of rights, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

88. Because Defendant's actions were "motivated by evil motive or intent" and/or "involve[d] a reckless or callous indifference to the federally protected rights of [the Plaintiff]," an award of punitive damages is appropriate to the fullest extent permitted by law. *See Smith v. Wade*, 461 U.S. 30 (1983).

## COUNT V

### Battery

*As to Defendant Myron Jackson*

89. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

90. Defendant Jackson, with intent and apparent ability to act, committed a harmful and offensive touching to the Plaintiff without the privilege or authority to do so when he twisted Christen's arm behind her back, yanked her arm, and/or dragged her body on the ground.

91. Defendant Jackson's conduct caused physical injury to Christen.

92. As a direct and proximate result of Defendant's unreasonable and unlawful actions, Christen has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to,

medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT VI

### Malicious Prosecution

*As to Defendant Myron Jackson*

93. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

94. Defendant Jackson intentionally and maliciously initiated criminal proceedings against the Plaintiff based on the arrest that occurred on July 31, 2024.

95. The criminal proceedings were dismissed in the Plaintiff's favor.

96. No probable cause existed to charge the Plaintiff with the aforementioned criminal charges.

97. Specifically, the Franklin District Court found that there was no probable cause for the charges of Obstructing Governmental Operations and Resisting Arrest.

98. As a consequence of Defendant's conduct, Plaintiff has suffered substantial mental pain and suffering, an unjustified deprivation of her liberty, and a criminal prosecution that Defendant maliciously initiated and continued. Plaintiff is entitled to recover from Defendant the actual monetary damages required to compensate her for mental pain and suffering, the loss of her liberty, and the expenses, inconvenience and distress she experienced in the course and as a consequence of her criminal prosecution.

99. As a direct and proximate result of Defendant Jackson's intentional and unlawful conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited

to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT VII

### False Arrest/False Imprisonment

*As to Defendant Myron Jackson*

100. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

101. On July 31, 2024, the Plaintiff was taken into custody by Defendant Jackson, and she was wrongfully and unlawfully lodged in the Franklin County Regional Jail.

102. The arrest by Defendant Jackson intentionally and/or willfully confined the Plaintiff, contrary to her will, and without authority of law, in a manner sufficient to interfere with her liberty.

103. Due to the unlawful detention, the Plaintiff was humiliated, frightened, shamed, and stripped of her dignity.

104. As a direct and proximate result of Defendant Jackson's intentional and unlawful conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, deprivation of rights, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT VIII

### Intentional Infliction of Emotional Distress

*As to Defendant Myron Jackson*

105. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

106. Defendant Jackson's conduct as set forth hereinabove was either intentional or reckless.

107. Defendant Jackson's conduct is intolerable and offends the generally accepted standards of decency and morality in the community.

108. Such conduct would be considered outrageous, and such conduct was a substantial factor in causing serious and extreme physical, emotional, and psychological injuries and damages to the Plaintiff.

109. In the context of all surrounding actions, the threat to separate a law-abiding mother from her children was an outrageous abuse of authority.

110. Defendant's conduct resulted in Christen experiencing emotional and psychological injuries, including mental anguish, trauma, nightmares, humiliation, emotional distress, loss of enjoyment of life, and other non-pecuniary losses.

111. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer substantial past and future damages, both compensatory and general, including, but not limited to, medical bills, attorney's fees, loss of income, severe emotional distress, mental anguish, embarrassment, humiliation, and physical pain and suffering.

## COUNT IX

### Punitive Damages

*As to all Defendants*

112. Plaintiff incorporates by reference the allegations in the preceding paragraphs of the Complaint.

113. Plaintiff seeks punitive damages as to all counts and wherever permitted by law to punish Defendants and deter any repetition of the mistreatment to which Plaintiff was subjected.

**WHEREFORE**, the Plaintiff respectfully requests trial by jury, an award of actual and punitive damages, costs and attorney's fees pursuant to 42 U.S.C. §1988, interest on all such sums at the maximum legal rate until paid, and all other relief to which she is entitled.

Respectfully submitted,

Patrick Brennan
W. Eric Branco
Johnson Branco & Brennan, LLP
326 West Main Street
Frankfort, Kentucky 40601
502-605-6100
patrick@jbbfirm.com
eric@jbbfirm.com
Counsel for Plaintiff