UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| CHRISTEN JOHNSON, | ) ) ) | Civil No. 3:25-cv-00033-GFVT |
| Plaintiff, | ) ) |  |
| v. | ) ) | **MEMORANDUM OPINION** |
| MYRON JACKSON, *et al.*, | ) ) | **&** |
|  | ) | **ORDER** |
| Defendants. | ) ) |  |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion to Dismiss filed by Defendant Sgt. Jason Briscoe. [R. 6.] Sgt. Briscoe contends that Plaintiff Johnson has not adequately pleaded a plausible claim under either a supervisory liability or a failure to intervene theory, sufficient to establish liability under 42 U.S.C. § 1983. For the reasons that follow, Sgt. Briscoe's Motion to Dismiss **[R. 6]** is **DENIED**.

**I**

Plaintiff Christen Johnson alleges the following relevant facts in her Complaint. [R. 1.] Ms. Johnson resides in Franklin County, Kentucky, along with her three young children. [*Id*. at 1.] On July 31, 2024, Trooper Myron Jackson of the Kentucky State Police initiated a traffic stop of a vehicle around 9:45 p.m., after his computer alerted him that the vehicle's registration was expired. [*Id*. at 3.] The vehicle was operated by Christina Calvert, the mother of Ms. Johnson. [*Id*.] Trooper Jackson initiated his lights and pulled the vehicle over in Ms. Johnson's driveway. [*Id*.]

Ms. Johnson observed the police lights from inside of her home and stepped outside to discern the situation, and she immediately observed that Ms. Calvert had been stopped by law

enforcement in her driveway. [*Id*.]  Ms. Johnson the "came upon a debate between Ms. Calvert and Trooper Jackson, as they disagreed over whether tags that say July are valid on the last day of July."[1] [*Id*.]  Trooper Jackson then "ordered" Ms. Johnson to return inside of her house and threatened her with arrest if she refused to do so. [*Id*.]  Ms. Johnson briefly returned inside of her home, grabbed her cell phone, and returned to her front walkway, approximately twenty-five feet from the traffic stop, and began to record the interaction. [*Id*. at 4.]  Ms. Johnson avers that she did not approach Trooper Jackson during this time, nor did she speak; rather, she silently filmed the traffic stop from a distance away. [*Id*.]

Upon discovering that Ms. Johnson had again exited her home, Trooper Jackson approach Ms. Johnson and stated, "Go inside of the house or I will take you from your kids and take you to jail." [*Id*.]  Ms. Johnson "responded that she had a right to record from a safe distance." [*Id*.]  Consequently, Trooper Jackson arrested Ms. Johnson and placed her in the back seat of his patrol vehicle. [*Id*. at 5.]  Without issuing either a written citation or warning to Ms. Calvert, Trooper Jackson departing the scene with Ms. Johnson, and took her to the Franklin County Regional Jail, where she was detained. [*Id*. at 5-6.]

While Trooper Jackson was en route to the Franklin County Regional Jail with Ms. Johnson, Ms. Calvert placed a 911 call and was connected with Sgt. Jason Briscoe with the Kentucky State Police. [*Id*.]  Sgt. Briscoe was Trooper Jackson's supervisor. [*Id*. at 2.]  After talking with Ms. Calvert, Sgt. Briscoe reviewed the bodycam footage of the traffic stop and the arrest of Ms. Johnson. [*Id*. at 6.]  Despite viewing the footage of the arrest, Sgt. Briscoe informed

---

[1] The nature of this disagreement appears to be related to whether Ms. Calvert's registration was, in fact, expired. Ms. Calvert's license plate contained tags which displayed "07/24." [R. 1 at 3.]  The traffic stop occurred on July 31, 2024.  Plaintiff Johnson claims that "KSP has an internal system alerting its officers statewide that registration tags are expired on the last day of each month when they are not actually expired." [*Id*. at 3.]  Ultimately, Ms. Calvert was given neither a written warning nor a citation for this purported violation. [*Id*. at 5.]

2

Ms. Calvert that he "would not interfere with the arrest." [*Id*.]

Ms. Johnson was released from the Franklin County Detention Center the following day and was left to walk several miles back to her home. [*Id*.] Ultimately, on February 27, 2025, following a probable cause hearing at which Trooper Jackson testified, the Franklin District Court determined that there was no probable cause for the arrest, and dismissed all charges against Ms. Johnson. [*Id*.]

On June 25, 2025, Ms. Johnson filed the above-captioned action in federal court, asserting claims against both Trooper Jackson and Sgt. Briscoe. Counts III and IV – the sole claims brought against Sgt. Briscoe – both contend that Sgt. Briscoe "had an opportunity to intervene and chose not to, demonstrating a deliberate indifference to Christen's constitutional rights." [*Id*. at 9-11.] Thus, they seek damages from Sgt. Briscoe in his individual capacity, premised on supervisory liability and failure to intervene, pursuant to 42 U.S.C. § 1983. [*Id*.] Defendant Briscoe now moves to dismiss the claims against him, pursuant to Fed. R. Civ. P. 12(b)(6). [R. 6.]

**II**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must provide grounds for his requested relief that are more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of cause of action will not do." *Id*.

To review a Rule 12(b)(6) motion, courts construe the complaint "in the light most favorable to the plaintiff" and make "all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The Court, however, "need not accept as true legal

3

conclusions or unwarranted factual inferences." *Id*. (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 446 (6th Cir. 2007)).  The complaint must enable a court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  To be plausible, a claim need not be probable, but the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*.  A complaint that pleads facts that are consistent with but not demonstrative of the defendant's liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 556).  The moving party bears the burden of persuading a trial court that the plaintiff fails to state a claim. *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).

Both counts of the Complaint in which Briscoe is a defendant are brought pursuant to 42 U.S.C. § 1983.  More specifically, Ms. Johnson contends that Briscoe is liable for two of Trooper Jackson's purported constitutional violations – of the Fourth and First Amendments, respectively – by virtue of either supervisor liability and/or a failure to intervene.  "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006).  Neither party contests that both Trooper Jackson and Sgt. Briscoe were acting under the color of state law at the time of the arrest of Ms. Johnson.  Sgt. Briscoe contends, however, that Ms. Johnson has failed to plausibly plead that he deprived Ms. Johnson of either her Fourth or First Amendment rights by failing to act or intervene during her arrest.[2]  Thus, we

---

[2] Defendant Briscoe indirectly suggests, in his Motion to Dismiss, that he may be shielded from liability by qualified immunity, but short of actually raising qualified immunity as a defense.  In fact, after Plaintiff Johnson addressed a potential qualified immunity argument in her response, Briscoe fails to even mention qualified immunity in his reply briefing.  Thus, we will not construe this tacit reference to qualified immunity as adequate to raise it as a basis for dismissing the claims against him at this stage of the litigation.  Furthermore, as the Sixth Circuit has made abundantly clear, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis

4

will address, in turn, whether Ms. Johnson has adequately pled a plausible supervisory liability or failure to warn claim, sufficient to survive a motion to dismiss.

**A**

To bring an individual capacity claim premised on supervisory liability, the plaintiff must provide "an allegation of personal liability" on the part of the supervisor. *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025) (citing *Peatross v. City of Memphis*, 181 F.3d 233, 240-41 (6th Cir. 2012)).  Put differently, the supervisory official must have violated the Constitution through his own actions. *Iqbal*, 556 U.S. at 677.  Thus, "[a]n official cannot be held liable for the constitutional violations of subordinates under a theory of *respondeat superior*, meaning that she 'cannot be held liable simply because … she was charged with overseeing' subordinate officers who violated the plaintiff's constitutional rights." *Id*. (quoting *Peatross*, 818 F.3d at 241).

Furthermore, "at a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross*, 818 F.3d at 242.  Liability cannot, however, be premised solely on the officer's "mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tennessee*, 159 F.3d 199, 2016 (6th Cir. 1998), cert. denied, 119 S. Ct. 1763 (1999)).  "Sloppiness, recklessness, or negligence," is likewise insufficient to establish supervisory liability under § 1983. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 866 (6th Cir. 2020).  On the other hand, the supervisor need not "physically put his hands on the injured party or even physically been present at the time of the constitutional violation," to be held liable for the constitutional violation. *Peatross*, 818 F.3d at 242.  It is within this middle ground – between

---

of qualified immunity." *Hart v. Hillsdale Cnty.*, 973 F.3d 627, 635 (6th Cir. 2020).  Rather, "it is preferable to resolve the 'threshold question' of a government officer's entitlement to qualified immunity at 'summary judgment[,] … not dismissal under Rule 12.'" *Venema v. West*, 133 F.4th 625, 632 (6th Cir. 2025) (quoting *Hart*, 973 F.3d at 635).

5

a "mere failure to act" and physical presence at the scene of the violation – where many supervisory liability cases, including this one, exist.

Lastly, there must also be "a causal connection between the defendant's wrongful conduct and the violation alleged." *Id*. A sufficient causal connection arises where "the supervisor's conduct, or lack thereof, 'could be reasonably expected to give rise to just the sort of injuries" that a plaintiff alleges have occurred. *Venema*, 133 F.4th at 633 (quoting *Campbell v. City of Springboro*, 700 F.3d 779, 790 (6th Cir. 2012)). "[C]ourts have framed the § 1983 proximate-cause question as a matter of foreseeability, asking whether it was reasonably foreseeable that the complained of harm would befall the § 1983 plaintiff as a result of the defendant's conduct." *Powers v. Hamilton County Pub. Def. Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007).

While both parties generally agree on the applicable precedent, they disagree over the precise nature and scope of the alleged constitutional violation. In Sgt. Briscoe's view, the alleged unconstitutional act – the arrest of Ms. Johnson – concluded at the time she was detained at her home. [R. 6 at 6.] Thus, in Sgt. Briscoe's view, he only learned of the purported constitutional violations after they had occurred. Consequently, he posits that this case represents a "mere failure to act," because at the time the violation occurred, Sgt. Briscoe was not on scene or otherwise aware of the Ms. Johnson's encounter with Trooper Jackson. [*Id*.] According to Sgt. Briscoe, the fact that he later was informed of the arrest by Ms. Calvert and reviewed the body camera footage is of no consequence, because the unconstitutional violation had already occurred and he was unable to remedy a past violation. [*Id*.]

Ms. Johnson takes a more expansive view of the scope of the purported constitutional violations. In Johnson's view, the alleged constitutional violation – her arrest and seizure

6

without probable cause in retaliation for her exercise of First Amendment rights – was ongoing at the time Ms. Calvert spoke with Sgt. Briscoe. [R. 9 at 6-8.]  Thus, in Johnson's view, by reviewing the body camera footage and failing to take corrective action prior to her being booked at the Franklin County Regional Jail, Sgt. Briscoe knowingly acquiesced in the unconstitutional actions of his subordinate, Trooper Jackson.  We agree.

In reaching this conclusion, the Sixth Circuit's opinions in *Peatross* and *Venema* are particularly instructive.  In *Peatross*, perhaps the seminal Sixth Circuit case addressing supervisory liability under § 1983, an estate of a decedent brought suit against various officers of the Memphis Police, including its Director, Toney Armstrong, alleging constitutional violations stemming from an officer-involved shooting. *Peatross*, 818 F.3d at 236-37.  The Court concluded that the plaintiff's allegations "that Armstrong failed to train and supervise the officers to avoid the use of excessive force, failed to investigate the allegations of excessive force properly, and attempted to cover-up the unconstitutional conduct of his subordinates by exonerating the officers in an effort to escape liability," was enough to support a plausible inference that Amstrong "knowingly acquiesced" in the unconstitutional conduct of his subordinate officers, sufficient to survive a motion to dismiss. *Id*. at 243-44.

In *Venema,* the estate of a deceased inmate brought suit after he asphyxiated himself with a plastic bag while in the custody of the Michigan Department of Corrections. *Venema*, 133 F.4th at 628.  The plaintiff also brought a § 1983 claim against the warden of the correctional facility in which the inmate was held, claiming that the warden was liable for his death in violation of the Eighth Amendment. *Id*.  Looking to prior Sixth Circuit precedent, including *Peatross*, the Court stated that "a defendant-supervisor knowingly acquiesces in unconstitutional conduct when she 'abandons the specific duties of [her] position in the face of actual knowledge of a

7

breakdown in the proper workings of the department.'" *Id*. at 635 (quoting *Winkler v. Madison County*, 893 F.3d 877, 898 (6th Cir. 2018)). The Court noted that the Complaint alleged that the warden had such knowledge "because she knew that corrections officers were providing bags – dangerous contraband – to prisoners; she also was specifically aware that the plaintiff "had previously attempted suicide with a bag." *Id*. Thus, the Court concluded that such allegations plead a plausible supervisory liability claim sufficient to survive a 12(b)(6) motion to dismiss. *Id*. at 635-36.

Applying the knowing acquiescence test to Sgt. Briscoe, it is clear that Ms. Johnson adequately demonstrated that Sgt. Briscoe knowingly acquiesced in Trooper Jackson's alleged constitutional violation, sufficient to survive a motion to dismiss. As *Peatross* and *Venema* make clear, the gravamen of a supervisory liability claim is the knowledge the supervisor possessed, when he possessed it, and what he chose to do with it. Here, Ms. Johnson has pleaded that Sgt. Briscoe was well-armed with video evidence of Trooper Jackson's alleged constitutional violation, that he possessed that information while Ms. Johnson was still en route to jail in Trooper Jackson's police cruiser, yet he elected to take no corrective action. [R. 1 at 5-6.] That Trooper Jackson had already placed Ms. Johnson under arrest is of no consequence; if her arrest was an unlawful seizure in the absence of probable cause, that was equally true the minute she was placed in handcuffs as it was when she walked into the Franklin County Regional Jail to be booked. At bottom, Plaintiff Johnson's complaint demonstrates that Sgt. Briscoe knowingly acquiesced in the actions undertaken by Trooper Jackson, which Plaintiff likewise alleges were violative of the First and Fourth Amendments. This is sufficient to survive a 12(b)(6) motion to dismiss.

Ms. Johnson has likewise made sufficient allegations as to the causation component of

8

the supervisory liability claim to survive Sgt. Briscoe's motion to dismiss. Again, at this stage of the litigation, we must ask whether there is a "causal connection between [the Defendant's] acts and omissions" and the "constitutional injuries alleged." *Venema*, 133 F.4th at 636. More nuanced questions as to causation are generally more appropriately resolved at the summary judgment stage in these cases. *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) (quoting *NOW v. Scheidler*, 510 U.S. 249, 256 (1994)) ("causal weaknesses will more often be fodder for a summary-judgment motion"). Briscoe contends that "the timeline alone defeats causation," but that is not the case. [R. 6 at 7.] Briscoe's alleged failure to act in the face of video evidence of the allegedly unlawful arrest of Ms. Johnson "could be reasonably expected to give rise" to the continued unlawful deprivation of her liberty, absent intervention. See *Peatross*, 818 F.3d at 244 (implying that the causal connection between a supervisor's acts and omissions and plaintiffs' constitutional injuries is strengthened when the supervisor has "actual knowledge" of the risks that would give rise to the injuries). Put simply, Johnson has adequately alleged that Briscoe's omissions could reasonably be expected to result in her continued unconstitutional seizure.

     Sgt. Briscoe's reliance on the Sixth Circuit's recent decision in *Does v. Whitmer* is misplaced. In that case, a nameless group of five Michigan sex offenders, brought suit against the Michigan State Police, alleging continued enforcement of certain provisions of the Sex Offender Registration Act (SORA) after federal courts had declared those provisions unconstitutional. *Does v. Whitmer*, 69 F.4th 300, 302 (6th Cir. 2023). The plaintiffs brought suit under 42 U.S.C. § 1983 seeking damages from certain high-ranking state officials under a supervisory liability theory, claiming the officials oversaw and impliedly approved the continued enforcement. *Id*. In determining that there were insufficient facts to hold the directors liable

9

under a supervisory liability theory, the Sixth Circuit distinguished *Does* from *Peatross* and *Garza*. *Id*. at 307-08. In *Does*, the plaintiffs did not allege that "they told [the directors] that the [police] was violating their rights, that the directors acknowledged problems, or that they attempted to cover up constitutional violations." *Id*. at 308. The plaintiffs likewise failed to allege that "the directors received reports that the plaintiffs' rights … had been or were being violated and failed to take precautions against likely future violations." *Id*. Rather, "plaintiffs complain only that [the directors] failed to act and that directors' failure encouraged [police] officers to continue violating the plaintiffs' rights." *Id*.

Thus, critical to the Court's holding in *Does* was the supervisors' complete lack of specific facts or details of violations of the plaintiffs' specific constitutional protections. Put differently, there was nothing to which the supervisors could implicitly authorize, approve, of knowingly acquiesce in. As already stated, Plaintiff Johnson contends that Sgt. Briscoe was keenly aware of the allegedly unconstitutional actions of Trooper Jackson, evidenced through his immediate review of body camera footage while Johnson was en route to jail. [R. 1 at 5-6.] Thus, this is not akin to the mere failure to intervene by the directors in *Does*. Rather, Johnson has adequately pled that Sgt. Briscoe, armed with clear evidence of Trooper Jackson's actions, impliedly approved or knowingly acquiesced in a constitutional violation through his failure to take corrective action.

Contrary to Sgt. Briscoe's assertions, this case does not appear, at this juncture, to be one in which a supervisor is accused of a mere "failure to act" standing alone. Rather, based upon the allegations contained in the Complaint, it appears to be a case, in line with *Peatross* and *Venema*, in which a supervisor failed to act in the face of video evidence of unconstitutional actions by subordinates and, in so doing, knowingly acquiesced in their conduct. Thus, because

10

Ms. Johnson sufficiently pleaded that Sgt. Briscoe knowingly acquiesced in Trooper Jackson's conduct, as well as its causal connection to her injuries, she has sufficiently pleaded that Sgt. Briscoe violated her constitutional rights to survive the 12(b)(6) motion.

### B

"[A] police officer can be liable under § 1983 when he or she fails to intervene and prevent constitutional violations." *Hoskins v. Knox Cnty.*, 2018 U.S. Dist. LEXIS 42694, at *47 (E.D. Ky. Mar. 15, 2018).  In order to plead a viable claim for failure to intervene, the plaintiff must show that the officer, (1) "observed or had reason to know that [constitutional harm] would be or was [taking place], and (2) … had both the opportunity and the means to prevent the harm from occurring." *Sheffey v. City of Covington*, 564 Fed. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).  Although failure to intervene claims most commonly arise in the context of excessive force, the Sixth Circuit has extended this theory of liability to other contexts as well. *Thomas v. Mayo*, 2024 U.S. Dist. LEXIS 5132, at *17 (W.D. Ky. Jan. 10, 2024) (citing *Johnson v. Village of Ottawa Hills*, 5 Fed. App'x 390, 395 (6th Cir. 2001)).  There must, however, be "a realistic opportunity to intervene and prevent harm." *Wells v. City of Dearborn Heights*, 538 Fed. App'x 631, 640 (6th Cir. 2013) (citing *Ontha v. Rutherford Cty., Tenn.*, 222 Fed. App'x 498, 507 (6th Cir. 2007)).  Unlike supervisor liability claims, either a fellow officer or a supervisor can be held liable for failure to intervene. *Smith v. Heath*, 691 F.2d 220, 224-25 (6th Cir. 1982).

Sgt. Briscoe relies on the Sixth Circuit's opinions in *Burley* and *Jacobs* to support his contention that he cannot be held liable for his failure to intervene.  These cases, however, are distinguishable from the facts before us.  In *Burley*, a multi-agency task force focused on combatting drug trafficking executed a series of raids at the plaintiffs' residences located along

the "8 Mile Corridor" in Detroit. *Burley v. Gagacki*, 729 F.3d 610, 614 (6th Cir. 2013). The task force was led by officers of the federal Drug Enforcement Agency ("DEA") supported by state and local law enforcement. *Id*. During each of the raids, federal law enforcement officers physically entered the home while the state and local officers remained outside to provide perimeter security. *Id*. at 614-15. Plaintiffs brought claims for excessive use of force against the federal, state, and local officers under 42 U.S.C. § 1983; the claims against the state and local officers were premised, in part, on a failure to intervene theory. *Id*. at 619-20. After reviewing the record, the Court concluded that while the officers were on scene, they were not part of the "entry team," and thus were not able "to witness or respond to any unconstitutional conduct that may have occurred." *Id*. at 620.

Similarly, in *Jacobs*, the plaintiff brought a claim against several officers and the police department following an encounter with law enforcement. *Jacobs v. Village of Ottawa Hills*, 5 Fed. App'x 390, 391-93 (6th Cir. 2001). In that case, an officer arrested the plaintiff without probable cause, and, in fact, fell even short of the "minimal standards of reasonable suspicion," to justify a Terry stop in the first place. *Id*. at 394-95. The plaintiff brought an action under 42 U.S.C. § 1983 against both the primary officer, Officer Miller, as well as a second officer, Officer Knallay, who arrived later as backup and assisted in making the arrest. *Id*. at 391. With respect to the backup officer, the plaintiff's argument relied upon a failure to intervene. *Id*. at 395. The Court concluded, however, that the backup officer could not be held liable for failing to intervene. *Id*. Officer Miller's unconstitutional action was a seizure of the plaintiff in the absence of either probable cause of reasonable suspicion. *Id*. When Officer Knallay arrived on the scene, he saw an altercation between the plaintiff and Officer Miller already underway, and Miller struggling to grab the plaintiff. *Id*. Thus, when he took action to assist Officer Miller in

12

effectuating the arrest, he had no knowledge of the constitutional violation Officer Miller was in the process of making. *Id*. Consequently, the Court concluded that Officer Knallay did not violate the law, and was entitled to qualified immunity. *Id*. at 396.

Unlike the officers in *Burley* and *Jacobs*, the Complaint alleges that Sgt. Briscoe was notified of Trooper Jackson's unconstitutional seizure of Ms. Johnson as it was ongoing, and in the face of evidence of its unconstitutional character, refused to intervene. This stands in stark contrast to the officers in both *Burley* and *Jacobs* who were each entirely unaware of the scope and nature of the unconstitutional conduct of their fellow officers. Rather, Ms. Johnson contends that Sgt. Briscoe had access to review – and in fact reviewed – Trooper Jackson's body camera footage and refused to intervene to stop the allegedly unconstitutional seizure. [R. 1 at 5-6.]

Thus, Plaintiff Johnson has adequately pled that Sgt. Briscoe was acutely aware of the allegedly unconstitutional actions taken by Trooper Jackson and still had ample opportunity to intervene prior to Ms. Johnson's booking at the jail. [*Id*.] While subsequent discovery may shed more light on the precise nature and scope of the information available to Sgt. Briscoe while Ms. Johnson was en route to the detention center, the allegations contained in the complaint nonetheless plead a plausible claim sufficient to survive a motion to dismiss.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Briscoe's Motion to Dismiss **[R. 6]** is **DENIED**.

This the 24th day of February 2026.

Gregory F. Van Tatenhove
United States District Judge